# EXHIBIT "A"

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.

KATHY SALAS

      Plaintiff,

v.

GOD'S BLESSING LTD., ROGER WEST,
and JAMES "LARRY" LARMAN

Defendants.

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

      KATHY SALAS ("Plaintiff"), by and through her undersigned counsel, sues Defendants GOD'S BLESSING LTD., ROGER WEST and JAMES "LARRY" LARMAN (Defendants), and states at all material times:

1.      This is an action for damages that exceed fifteen thousand dollars ($15,000.00), exclusive of interest, costs, and attorney fees.

2.      Defendants GOD'S BLESSING LTD., ROGER WEST and JAMES "LARRY" LARMAN at all times material hereto, personally or through an agent:

    a.    Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b.    Was engaged in substantial activity within this state;

    c.    Operated vessels in the waters of this state;

    d.    Committed one or more of the acts stated in Florida Statutes, Section 48.081, 48.181 or 48.193;

    e.    The acts of Defendants set out in this Complaint occurred in whole or in part in   this county and/or state.

1

3.      This is an admiralty and maritime claim within the meaning of 28 U.S.C. § 1333, involving an action for damages under the Jones Act, 46 U.S.C. § 30104, et seq. and the General Maritime Law of the United States, 46 U.S.C. § 30501, et seq.

4.      At all times material hereto, KATHY SALAS (PLAINTIFF), was and is a United States citizen and a resident of the state of Florida.

5.      At all times material hereto, the Vessel M/Y EXODUS, official number 745268, was a 2003 29.33-meter Pershing motor yacht was operating in the navigable waters along Miami-Dade County and Palm Beach County, Florida.

6.      This claim arises out of personal injuries PLAINTIFF sustained while working on board the Vessel M/Y EXODUS on or about September 16, 2019.

7.      At the time of the subject voyage, the Vessel was owned by GOD'S BLESSING LTD and ROGER WEST.

8.      At all times material hereto, PLAINTIFF was employed GOD'S BLESSING LTD and/or ROGER WEST.

9.      At all times material hereto, Defendant, GOD'S BLESSING, LTD., was a foreign corporation, maintaining an office and/or carrying on business in the Miami-Dade and Palm Beach County, Florida, and was the owner, operator, charterer, and/or was otherwise in control of M/Y EXODUS.

10.     That at all times material hereto, Defendant, ROGER WEST, was and is a United States citizen and resident of the state of Florida.

11.     That at all times material hereto, Defendant, ROGER WEST, was the principal shareholder and corporate agent of Defendant, GOD'S BLESSING, LTD., and the owner, operator, charterer, and/or was otherwise in control of M/Y EXODUS.

12.     At all times material hereto, Defendants, GOD'S BLESSING LTD., and ROGER WEST, were responsible for the navigation, chartering, operation, control, crew, pre-trip planning, maintenance, key shipboard operations, steering, docking, line-handling, positioning, and propulsion of the M/Y EXODUS.

13.     At all times material hereto, the Vessel was operated by Defendant JAMES "LARRY" LARMAN with the permission and consent of the Vessel owners.

14.     At all times material hereto, the Vessel owners employed Defendant JAMES "LARRY" LARMAN to serve as Master of the Vessel.

15.     At the time of the subject voyage, the Vessel owner GOD'S BLESSING LTD. or ROGER WEST employed PLAINTIFF to serve as deck/stewardess crew member of the Vessel.

16.     PLAINTIFF was hired to work on the Vessel from Friday, September 13, 2019 to Monday, September 16, 2019 at the rate of $275 per day.

17.     That at all times material hereto, PLAINTIFF was acting in the course and scope of her employment as Jones Act Seaman with Defendant) aboard the M/Y EXODUS serving as a deck/stewardess.

18.     That at all times material hereto, Defendant, ROGER WEST, in his individual capacity and in his capacity as an agent of Defendant, GOD'S BLESSING, LTD., was in privity and knowledge of the manner in which the M/Y EXODUS was being operated.

19.     That on September 13, 2019, the M/Y EXODUS was moved to the Boca Resort in Palm Beach County, Florida with Defendant, ROGER WEST, present and aboard.

20.     ROGER WEST had privity and knowledge of the negligence and incompetence of the Master during that voyage.

21.     While attempting to dock the M/Y EXODUS on September 13, 2019, the Master Defendant JAMES "LARRY" LARMAN improperly steered and maneuvered, the M/Y EXODUS without maintaining a proper lookout so that a crewmember and stewardess of the M/Y EXODUS was pinned between the M/Y EXODUS and the piling of the dock. The Master Defendant JAMES "LARRY" LARMAN negligently operated the Vessel. The Master instructed the crew member to be in an unsafe area.

22.     ROGER WEST had privity and knowledge of the September 13, 2019 incident.

23.     ROGER WEST had privity and knowledge of the Master Defendant JAMES "LARRY" LARMAN's incompetence and negligence during the September 13, 2019 voyage.

24.     Despite the Master Defendant JAMES "LARRY" LARMAN's agreement to hire her for four days, he informed PLAINTIFF at the last moment she was not needed on September 14 to 15, 2019.  The Master instructed PLAINTIFF to return to work on the Vessel on September 16, 2019.

25.     On September 16, 2019, PLAINTIFF returned to serve as a stewardess crew member aboard the M/Y EXODUS as it set out from the Boca Resort in Palm Beach County, Florida to the Deering Bay Marina in Miami-Dade County, Florida operating in the waters off Deering Bay, Florida.

26.     Despite observing the manner in which the M/Y EXODUS was negligently operated on September 13, 2019 (including but not limited to the docking incident), ROGER WEST, in his individual capacity and on behalf of GOD'S BLESSING LTD., and his agents allowed the Master Defendant JAMES "LARRY" LARMAN to operate the Vessel on September 16, 2019.

3

27.   ROGER WEST, in his individual capacity and on behalf of GOD'S BLESSING LTD., and his agents failed to prepare an adequate pre-trip plan and/or administer adequate training providing for the safe line handling, docking, and lookout practices for the September 16, 2019 trip.

28.   During the September 16, 2019 trip, the M/Y EXODUS was improperly navigated and operated towards the concrete dock/pier of the Deering Bay Marina. Once again, the Master Defendant JAMES "LARRY" LARMAN was negligent and incompetent in docking the Vessel.

29.   The Master Defendant JAMES "LARRY" LARMAN failed to ensure dock lines were in place and/or available prior to the docking.

30.   The Master Defendant JAMES "LARRY" LARMAN failed to plan for a reasonably safe docking.

31.   The Master Defendant JAMES "LARRY" LARMAN failed to adequately communicate and/or train the crew members for the docking.

32.   During the September 16, 2019 docking, the Master Defendant JAMES "LARRY" LARMAN lost control of the Vessel.   The other crew member did not know what to do and was freaking out.   The Master Defendant JAMES "LARRY" LARMAN left the helm.

33.   During the chaos of the botched docking, the Master Defendant JAMES "LARRY" LARMAN shouted at PLAINTIFF to jump from the vessel onto the concrete dock/pier to secure the Vessel.   PLAINTIFF said no, but the Master Defendant JAMES "LARRY" LARMAN continued to shout and ordered her to jump in total disregard for her safety.

34.   As a result of the dangerous jump ordered by the negligent and incompetent Master Defendant JAMES "LARRY" LARMAN, PLAINTIFF felt immediate pain and requested medical treatment.   The Master Defendant JAMES "LARRY" LARMAN refused her request for medical treatment and attempted to leave the scene.   PLAINTIFF followed him and got in the car he was departing in.   She continued to request medical treatment, which was refused.   When the vehicle arrived at the destination, PLAINTIFF followed the Master Defendant JAMES "LARRY" LARMAN, again, requesting the vessel's insurance information so she could go get medical treatment.   The Master Defendant JAMES "LARRY" LARMAN ignored her requests. PLAINTIFF grabbed the Master's bag in an attempt to get him to stay and provide her the information for medical.   Then the Master Defendant JAMES "LARRY" LARMAN physically assaulted PLAINTIFF in an attempt to get her to stop following him and requesting medical care. The assault caused PLAINTIFF pain and injuries. Thereafter, PLAINTIFF contacted the police for assistance.   Then, the Master Defendant JAMES "LARRY" LARMAN paid PLAINTIFF for only two days of work.   The Master refused to pay her for all four days that he initially hired her to work.

35.    As a result of the dangerous jump ordered by the negligent and incompetent Master Defendant JAMES "LARRY" LARMAN, PLAINTIFF suffered serious injuries, including but not limited to: foot and pubis injuries as well as complex regional pain syndrome (CRPS) and other issues.

## COUNT I
## JONES ACT NEGLIGENCE AGAINST DEFENDANT GOD'S BLESSING LTD. WITHIN ITS KNOWLEDGE AND PRIVITY

PLAINTIFF realleges, incorporates by reference, and adopts paragraphs one through thirty-five as though they were originally alleged herein and further alleges:

36.    This claim asserts cause of action against Defendant GOD'S BLESSING LTD. for negligence under the Jones Act and General Maritime law, 46 U.S.C. §§ 30104, 30505(b).

37.    On or about September 16, 2009, PLAINTIFF was employed by Defendant, GOD'S BLESSING LTD., as a seaman and was a member of the Vessel's crew.

38.    The Vessel was in navigable waters.

39.    It was the duty of the aforementioned Defendant to provide PLAINTIFF with a safe place to work.

40.    At all times material hereto, Defendant GOD'S BLESSING LTD. owed a duty of care to PLAINTIFF to provide a reasonably safe workplace on the M/Y EXODUS and to use ordinary care to operate, handle, and maintain the M/Y EXODUS in a reasonably safe condition. 46 U.S.C. § 30104.

41.    As part of the above-duty, Defendant GOD'S BLESSING LTD. also owed a duty of care to use due and proper care to provide a competent crew and Captain/Master. 46 U.S.C. § 30505(b); see also, *Hercules Carriers, Inc.*, 768 F.2d at 1570-76.

42.    As part of the above-duty, Defendant GOD'S BLESSING LTD. also owed a duty to PLAINTIFF to exercise diligence in selecting, training, or supervising crew members and the Captain/Master. 46 U.S.C. § 30505(b); see *Potomac Transp., Inc. v. Ogden Marine, Inc.*, 909 F.2d 42, 46 (2d Cir.1990) ("the failure of a ship's master to exercise diligence in selecting, training, or supervising crew members whose [acts or omissions] contribute to an accident is proper ground to deny limitation of liability); see also, *Harrington v. Atlantic Sounding Co., Inc.,* 2013 WL 94815, at *7 (E.D.N.Y. January 7, 2013) (finding Jones Act negligence where employer "provided no instruction or training to its crew as to how best to perform the [maritime] task [at hand] ...").

43. As part of the above-duty, Defendant GOD'S BLESSING LTD. also owed a duty to provide and maintain reasonably safe equipment, safe working areas and passageways, adequate safety measures and training, proper job design and procedures for performing work safely, and risk analysis to identify and correct foreseeable dangers. 46 U.S.C. § 30104; see, e.g., *Joyce v. Atlantic Richfield Co.,* 651 F.2d 676 (10th Cir. 1981); see also, *Complaint of Cameron Boat Rentals, Inc.,* 683 F. Supp. 577, 585 (W.D.La.1988).

44. At all times material hereto, Defendant GOD'S BLESSING LTD. knew or should have known of the unsafe condition in which the M/Y EXODUS was maintained since ROGER WEST was aboard the M/Y EXODUS and observed the manner in which it was operated in the days leading up to Plaintiff's incident and was present for the vessel's September 13, 2019 docking incident resulting in another crew member becoming pinned against a dock piling merely three days prior to the Plaintiff's accident.

45. At all times material hereto, it was foreseeable to Defendant GOD'S BLESSING LTD. that a breach of the aforementioned duties by way of maintaining the M/Y EXODUS in an unsafe condition would create a zone of risk or an increased risk of serious bodily harm as Defendant ROGER WEST, was present for and observed firsthand how such breaches by way of improper maneuvering, steering, line handling, docking, and lookout practices caused another crew member to become pinned against a concrete dock piling on September 13, 2019, just three days before the subject accident.

46. That at all times material hereto, Defendant GOD'S BLESSING LTD. had sufficient opportunity to correct such unsafe conditions prior to the September 16, 2019 accident when Defendant, ROGER WEST, was aboard the M/Y EXODUS and was able to observe and rectify such unsafe conditions and the consequences thereof prior to the accident.

47. On or about September 16, 2019, PLAINTIFF was injured while aboard the vessel.

48. PLAINTIFF's injuries are due to the fault and negligence of Defendant GOD'S BLESSING LTD., and/or its agents, servants, and/or employees, including the M/Y EXODUS Master/Captain, James "Larry" Larman, through one or more of the following acts or omissions:

    a. failing to properly navigate the M/Y EXODUS;
    b. failing to implement proper and adequate policies guidelines and/or procedures for safe and proper trip planning, line handling, docking, and lookout practices;
    c. permitting the operation of the M/Y EXODUS in an unsafe, negligent and careless manner;
    d. failing to provide the crew of the M/Y EXODUS with a safe place to work with proper and adequate machinery, crew, and equipment;
    e. failing to exercise due care and caution;

f.  failing to promulgate and/or enforce adequate safety policies and/or procedures aboard the M/Y EXODUS;

g.  failing to promulgate and enforce adequate policies, procedures, and/or guidelines for safe and proper trip planning, line-handling, docking, and lookout practices to be followed by the M/Y EXODUS's Captain/Master and crew;

h.  failing to implement policies and procedures regarding required pre-trip planning practices to account for safe and proper docking at the close of the trip;

i.  failing to properly train, instruct and/or supervise the captain, agents and crewmembers of the M/Y EXODUS;

j.  failing to train M/Y EXODUS crew members on how safely and properly perform their assigned tasks on the M/Y EXODUS;

k.  allowing line-handling and docking tasks to be assigned and carried out by crew members who lacked the necessary training and experience to do so safely;

l.  instructing the crew member to put away the docking lines put out by PLAINTIFF;

m. failing to adequately monitor the Master/captain of the M/Y EXODUS;

n.  the master physically assaulted PLAINTIFF;

o.  failing to implement and provide retraining for the crew following the occurrence of an accident;

p.  permitting the M/Y EXODUS to embark on the September 16, 2019 voyage without a proper pre-trip plan in place to account for safe docking at the Deering Bay Marina;

q.  failing to take the necessary measures to ensure dock lines were in place and/or available for docking;

r.  permitting improper and unsafe steering, docking, line-handling, and lookout practices to be followed by captain and crew members of the M/Y EXODUS ;

s.  permitting the M/Y EXODUS to be operated toward the concrete dock/pier of the Deering Bay marina to dock the M/Y EXODUS without having lines in place and/or available;

t.  permitting the captain to direct crew members, particularly PLAINTIFF, to carry out line-handling, and docking tasks in an unsafe and dangerous manner;

u.  permitting the Master to require PLAINTIFF to jump from the Vessel onto the concrete dock/pier to secure the M/Y EXODUS and lines while the vessel was still underway;

v.  failing to keep a proper, safe, and vigilant lookout when PLAINTIFF was securing the M/Y EXODUS and lines as instructed;

w. failing to avoid injury of the crew of the M/Y EXODUS;

x.  failing to warn;

y.  denying Plaintiff's requests for immediate medical care for her injuries;

z.  failing to properly diagnose and/or treat PLAINTIFF's injuries;

aa. failing to provide prompt, proper and adequate medical care which aggravated PLAINTIFF's injuries and caused her additional pain and disability and/or

bb. failing to create or enforce sound operations and management practices necessary to provide its crew with a safe place to work, all of which injured PLAINTIFF ;

7

49. Defendant GOD'S BLESSING LTD. knew of the foregoing conditions causing PLAINTIFF 's incident and did not correct them, or the conditions existed for a sufficient length of time so that Defendants in the exercise of reasonable care should have learned of them and corrected them.

50. The aforesaid acts of negligence were within the privity and knowledge of Defendant GOD'S BLESSING LTD., as based on ROGER WEST's, presence aboard the M/Y EXODUS during the time leading up to the September 16, 2019 incident as well as other knowledge that he knew or should have known. See *The M/V Sunshine, II v. Beavin*, 808 F.2d 762 (11th Cir. 1987).

51. As a direct and proximate result of the negligence and recklessness of Defendant GOD'S BLESSING LTD., PLAINTIFF  was injured about her body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions there from, incurred medical expenses in the care and treatment of PLAINTIFF 's injuries, suffered physical handicap, lost wages, income lost in the past, and her working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature and PLAINTIFF  will suffer the losses and impairments in the future. In addition PLAINTIFF  in the past and in the future has lost the fringe benefits that come with PLAINTIFF 's job. These losses are permanent and continuing and PLAINTIFF  has and will continue to suffer such losses in the future.

52. PLAINTIFF  demands trial by jury for all issues so triable.

WHEREFORE, PLAINTIFF  demands judgment against Defendant GOD'S BLESSING LTD. for actual and compensatory damages, prejudgment and post-judgment interest, and costs; that Defendant claim for exoneration from or limitation of liability be denied; and for such other and further relief deemed just and proper under the circumstances.

## COUNT II
## JONES ACT NEGLIGENCE AGAINST DEFENDANT ROGER WEST WITHIN HIS KNOWLEDGE AND PRIVITY

PLAINTIFF realleges, incorporates by reference, and adopts paragraphs one through thirty-five as though they were originally alleged herein and further alleges:

53. This claim asserts cause of action against Defendant for negligence under the Jones Act and General Maritime law, 46 U.S.C. §§ 30104, 30505(b).

54. On or about September 16, 2009, PLAINTIFF  was employed by Defendant, ROGER WEST as a seaman and was a member of the Vessel's crew.

55. The Vessel was in navigable waters.

56. It was the duty of the aforementioned Defendant ROGER WEST to provide PLAINTIFF   with a safe place to work.

57. At all times material hereto, Defendant ROGER WEST owed a duty of care to PLAINTIFF   to provide a reasonably safe workplace on the M/Y EXODUS and to use ordinary care to operate, handle, and maintain the M/Y EXODUS in a reasonably safe condition. 46 U.S.C. § 30104.

58. As part of the above-duty, Defendant ROGER WEST also owed a duty of care to use due and proper care to provide a competent crew and Captain/Master. 46 U.S.C. § 30505(b); see also, *Hercules Carriers, Inc.*, 768 F.2d at 1570-76.

59. As part of the above-duty, Defendant ROGER WEST also owed a duty to PLAINTIFF   to exercise diligence in selecting, training, or supervising crew members and the Captain/Master. 46 U.S.C. § 30505(b); see *Potomac Transp., Inc. v. Ogden Marine, Inc.*, 909 F.2d 42, 46 (2d Cir.1990) ("the failure of a ship's master to exercise diligence in selecting, training, or supervising crew members whose [acts or omissions] contribute to an accident is proper ground to deny limitation of liability); see also, *Harrington v. Atlantic Sounding Co., Inc.*, 2013 WL 94815, at *7 (E.D.N.Y. January 7, 2013) (finding Jones Act negligence where employer "provided no instruction or training to its crew as to how best to perform the [maritime] task [at hand] ...").

60. As part of the above-duty, Defendant ROGER WEST also owed a duty to provide and maintain reasonably safe equipment, safe working areas and passageways, adequate safety measures and training, proper job design and procedures for performing work safely, and risk analysis to identify and correct foreseeable dangers. 46 U.S.C. § 30104; see, e.g., *Joyce v. Atlantic Richfield Co.,* 651 F.2d 676 (10th Cir. 1981); see also, *Complaint of Cameron Boat Rentals, Inc.,* 683 F. Supp. 577, 585 (W.D.La.1988).

61. At all times material hereto, Defendant ROGER WEST knew or should have known of the unsafe condition in which the M/Y EXODUS was maintained since ROGER WEST was aboard the M/Y EXODUS and observed the manner in which it was operated in the days leading up to Plaintiff's incident and was present for the vessel's September 13, 2019 docking incident resulting in another crew member becoming pinned against a dock piling merely three days prior to the Plaintiff's accident.

62. At all times material hereto, it was foreseeable to Defendant ROGER WEST that a breach of the aforementioned duties by way of maintaining the M/Y EXODUS in an unsafe condition would create a zone of risk or an increased risk of serious bodily harm as Defendant ROGER WEST, was present for and observed firsthand how such breaches by way of improper maneuvering, steering, line handling, docking, and lookout practices caused another crew member to become pinned against a concrete dock piling on September 13, 2019, just three days before the subject accident.

63. That at all times material hereto, Defendant ROGER WEST had sufficient opportunity to correct such unsafe conditions prior to the September 16, 2019 accident when Defendant, ROGER WEST, was aboard the M/Y EXODUS and was able to observe and rectify such unsafe conditions and the consequences thereof prior to the accident.

64. On or about September 16, 2019, PLAINTIFF   was injured while aboard the vessel.

65. PLAINTIFF 's injuries are due to the fault and negligence of Defendant ROGER WEST, and/or his agents, servants, and/or employees, including the M/Y EXODUS Master/Captain, James Larrman, through one or more of the following acts or omissions:

   a. failing to properly navigate the M/Y EXODUS;
   b. failing to implement proper and adequate policies guidelines and/or procedures for safe and proper trip planning, line handling, docking, and lookout practices;
   c. permitting the operation of the M/Y EXODUS in an unsafe, negligent and careless manner;
   d. failing to provide the crew of the M/Y EXODUS with a safe place to work with proper and adequate machinery, crew, and equipment;
   e. failing to exercise due care and caution;
   f. failing to promulgate and/or enforce adequate safety policies and/or procedures aboard the M/Y EXODUS;
   g. failing to promulgate and enforce adequate policies, procedures, and/or guidelines for safe and proper trip planning, line-handling, docking, and lookout practices to be followed by the M/Y EXODUS's Captain/Master and crew;
   h. failing to implement policies and procedures regarding required pre-trip planning practices to account for safe and proper docking at the close of the trip;
   i. failing to properly train, instruct and/or supervise the captain, agents and crewmembers of the M/Y EXODUS;
   j. failing to train M/Y EXODUS crew members on how safely and properly perform their assigned tasks on the M/Y EXODUS;
   k. allowing line-handling and docking tasks to be assigned and carried out by crew members who lacked the necessary training and experience to do so safely;
   l. instructing the crew member to put away the docking lines put out by PLAINTIFF ;
   m. failing to adequately monitor the Master/captain of the M/Y EXODUS;
   n. the master physically assaulted PLAINTIFF ;
   o. failing to implement and provide retraining for the crew following the occurrence of an accident;
   p. permitting the M/Y EXODUS to embark on the September 16, 2019 voyage without a proper pre-trip plan in place to account for safe docking at the Deering Bay Marina;

q.  failing to take the necessary measures to ensure dock lines were in place and/or available for docking;

r.  permitting improper and unsafe steering, docking, line-handling, and lookout practices to be followed by captain and crew members of the M/Y EXODUS ;

s.  permitting the M/Y EXODUS to be operated toward the concrete dock/pier of the Deering Bay marina to dock the M/Y EXODUS without having lines in place and/or available;

t.  permitting the captain to direct crew members, particularly PLAINTIFF , to carry out line-handling, and docking tasks in an unsafe and dangerous manner;

u.  permitting the Master to require PLAINTIFF  to jump from the Vessel onto the concrete dock/pier to secure the M/Y EXODUS and lines while the vessel was still underway;

v.  failing to keep a proper, safe, and vigilant lookout when PLAINTIFF  was securing the M/Y EXODUS and lines as instructed;

w.  failing to avoid injury of the crew of the M/Y EXODUS;

x.  failing to warn;

y.  denying PLAINTIFF 's requests for immediate medical care for her injuries;

z.  failing to properly diagnose and/or treat PLAINTIFF 's injuries;

aa. failing to provide prompt, proper and adequate medical care which aggravated PLAINTIFF 's injuries and caused her additional pain and disability and/or

bb. failing to create or enforce sound operations and management practices necessary to provide its crew with a safe place to work, all of which injured PLAINTIFF ;

66.  Defendant ROGER WEST knew of the foregoing conditions causing PLAINTIFF 's incident and did not correct them, or the conditions existed for a sufficient length of time so that Defendants in the exercise of reasonable care should have learned of them and corrected them.

67.  The aforesaid acts of negligence were within the privity and knowledge of Defendant ROGER WEST, as based on ROGER WEST's, presence aboard the M/Y EXODUS during the time leading up to the September 16, 2019 incident as well as other knowledge that he knew or should have known. See *The M/V Sunshine, II v. Beavin*, 808 F.2d 762 (11th Cir. 1987).

68.  As a direct and proximate result of the negligence and recklessness of Defendant ROGER WEST, PLAINTIFF  was injured about her body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions there from, incurred medical expenses in the care and treatment of PLAINTIFF 's injuries, suffered physical handicap, lost wages, income lost in the past, and her working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature and PLAINTIFF  will suffer the losses and impairments in the future. In addition PLAINTIFF  in the past and in the future has lost the fringe benefits that come

with PLAINTIFF 's job. These losses are permanent and continuing and PLAINTIFF has and will continue to suffer such losses in the future.

69.     PLAINTIFF demands trial by jury for all issues so triable.

        WHEREFORE, PLAINTIFF demands judgment against Defendant ROGER WEST for actual and compensatory damages, prejudgment and post-judgment interest, and costs; that Defendants claim for exoneration from or limitation of liability be denied; and for such other and further relief deemed just and proper under the circumstances.

### COUNT III
### UNSEAWORTHINESS AGAINST DEFENDANT GOD'S BLESSING LTD. WITHIN ITS KNOWLEDGE AND PRIVITY

        PLAINTIFF realleges, incorporates by reference, and adopts paragraphs one through thirty-five as though they were originally alleged herein and further alleges:

70.     This claim asserts cause of action against Defendant, GOD'S BLESSING LTD., for the M/Y EXODUS' unseaworthiness under General Maritime law, 46 U.S.C. §30505(b).

71.     On or about September 16, 2019, PLAINTIFF was a seaman and a member of the crew of Defendant's vessel M/Y EXODUS which was in navigable waters.

72.     At all times material hereto, the vessel was owned, managed, operated and/or controlled by Defendant GOD'S BLESSING LTD..

73.     Defendant GOD'S BLESSING LTD. had the absolute nondelegable duty to provide PLAINTIFF with a seaworthy vessel.

74.     At all times material hereto, Defendant owed PLAINTIFF an absolute and non-delegable duty to ensure the seaworthiness of the M/Y EXODUS its equipment, appurtenances, and crew members as reasonably fit for their intended purposes and performing the M/Y EXODUS's functions. See *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 94 (1946) ("finding that "the obligation of seaworthiness is exclusively that of the ship owner."); see also, *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498–500, (1971).

75.     At all times material hereto, Defendant GOD'S BLESSING LTD.also owed a duty to exercise diligence in ensuring safe work practices, to provide adequate training for the crew members and the Master/Captain, and to implement procedures or guidelines that would provide the crew members and the Master/Captain with the requisite training, skill and knowledge to safely perform the task at hand and key operations. See, e.g., *Hercules Carriers, Inc. v. Claimant State of Florida*, 768 F.2d 1558, 1565-77 (11th Cir. 1985) (finding that operational negligence of the crew "became the responsibility of the owner when it failed to train its crew"); see also, *Trico Marine Assets v. Diamond B Marine Services*, 332 F. 3D

12

779 (5th Cir. 2003).

76.    In this regard, Defendant GOD'S BLESSING LTD. likewise had a duty to adequately "train[ ] or supervise[e]" its crew or create a safe environment with respect to line handling" and docking operations. *In re Moran Towing Corp.*, 984 F.Supp.2d 150, 181 (S.D.N.Y. 2013); see also, *In re Complaint of Sea Wolf Marine Towing & Transp., Inc.,* 2007 WL 3340931 (S.D.N.Y. Nov. 6, 2007).

77.    Defendant GOD'S BLESSING LTD. breached these duties owed to Plaintiff rendering the M/Y EXODUS unseaworthy by virtue of one or more of the following acts or omissions:

    a.  failing to reasonably inspect, maintain and/or repair the M/Y EXODUS, its equipment, appurtenances and its cargo;

    b.  failing to ensure that crew members were adequately trained, experienced, supervised, monitored and equipped for the task at hand;

    c.  failing to provide adequate training to crew members regarding safe and proper trip planning, line handling, docking and lookout practices;

    d.  failing to implement procedures, guidelines, and/or policies for the safe and proper trip planning, line handling, docking, and lookout practices;

    e.  failing enforce and require adherence with policies, guidelines, and /or procedures for safe and proper trip planning, line handling, docking, and lookout practices;

    f.  failing to implement policies and procedures regarding pre-trip planning to account for safe docking measures;

    g.  failing to train the M/Y EXODUS crew members on how safely and properly perform their assigned tasks on the M/Y EXODUS;

    h.  allowing line-handling, and docking tasks to be assigned and carried out by crew members who lacked the necessary training and experience to do so safely;

    i.  failing to establish and provide retraining and review procedures for the M/Y EXODUS crew members following the occurrence of an incident;

    j.  permitting the operation of the M/Y EXODUS in an unsafe, negligent and careless manner;

    k.  failing to ensure that the M/Y EXODUS was sufficiently crewed by individuals who were adequately trained, experienced, supervised, and equipped for the task at hand;

    l.  failing to arrange for a pre-trip plan that accounted for safe and proper docking, and line-handling of the M/Y EXODUS at Deering Bay Marina;

    m.  permitting the M/Y EXODUS to embark on the September 16, 2019 voyage without a proper pre-trip plan in place to account for docking and line-handling at the Deering Bay Marina;

    n.  permitting the operation of the M/Y EXODUS toward the concrete dock/pier of the Deering Bay Marina to dock the M/Y EXODUS without having lines in place and/or available;

    o.  permitting the Master to require PLAINTIFF  to jump from the vessel onto the concrete dock/pier to secure the M/Y EXODUS and lines while the M/Y EXODUS was still underway;

p.  failure to warn;

q.  instructing the crew member to put away the docking lines put out by PLAINTIFF ;

r.  failing to implement and provide retraining and review procedures for crew members following the occurrence of an accident; and/or

s.  failing to create or enforce sound operations and management practices necessary to provide its crew with a safe place to work.

78.  As a result of the unseaworthiness of the vessel, PLAINTIFF  was injured about her body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions there from, incurred medical expenses in the care and treatment of PLAINTIFF 's injuries, suffered physical handicap, lost wages, income lost in the past, and her working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature and PLAINTIFF  will suffer the losses and impairments in the future. In addition PLAINTIFF  in the past and in the future has lost the fringe benefits that come with PLAINTIFF 's job. These losses are permanent and continuing and PLAINTIFF  has and will continue to suffer such losses in the future.

79.  The unseaworthiness of the vessel was within the privity and knowledge of Defendant.

80.  PLAINTIFF  demands trial by jury for all issues so triable.


WHEREFORE, PLAINTIFF  demands judgment against Defendant GOD'S BLESSING LTD. for actual and compensatory damages, prejudgment and post-judgment interest, and costs; that Defendants claim for exoneration from or limitation of liability be denied; and for such other and further relief deemed just and proper under the circumstances.

## COUNT IV
## UNSEAWORTHINESS AGAINST DEFENDANT ROGER WEST
## WITHIN HIS KNOWLEDGE AND PRIVITY

PLAINTIFF   realleges, incorporates by reference, and adopts paragraphs one through thirty-five as though they were originally alleged herein and further alleges:

81.  This claim asserts cause of action against Defendant, ROGER WEST, for the M/Y EXODUS' unseaworthiness under General Maritime law, 46 U.S.C. §30505(b).

82.  On or about September 16, 2019, PLAINTIFF  was a seaman and a member of the crew of Defendant's vessel M/Y EXODUS which was in navigable waters.

83.  At all times material hereto, the vessel was owned, managed, operated and/or

controlled by Defendant ROGER WEST.

84.  Defendant ROGER WEST had the absolute nondelegable duty to provide PLAINTIFF   with a seaworthy vessel.

85.  At all times material hereto, Defendant ROGER WEST owed PLAINTIFF   an absolute and non-delegable duty to ensure the seaworthiness of the M/Y EXODUS its equipment, appurtenances, and crew members as reasonably fit for their intended purposes and performing the M/Y EXODUS's functions. See *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 94 (1946) ("finding that "the obligation of seaworthiness is exclusively that of the ship owner."); see also, *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498–500, (1971).

86.  At all times material hereto, Defendant ROGER WEST also owed a duty to exercise diligence in ensuring safe work practices, to provide adequate training for the crew members and the Master/Captain, and to implement procedures or guidelines that would provide the crew members and the Master/Captain with the requisite training, skill and knowledge to safely perform the task at hand and key operations. See, e.g., *Hercules Carriers, Inc. v. Claimant State of Florida*, 768 F.2d 1558, 1565-77 (11th Cir. 1985) (finding that operational negligence of the crew "became the responsibility of the owner when it failed to train its crew"); see also, *Trico Marine Assets v. Diamond B Marine Services*, 332 F. 3D 779 (5th Cir. 2003).

87.  In this regard, Defendant ROGER WEST   likewise had a duty to adequately "train[ ] or supervise[e]" its crew or create a safe environment with respect to line handling" and docking operations. *In re Moran Towing Corp.*, 984 F.Supp.2d 150, 181 (S.D.N.Y. 2013); see also, *In re Complaint of Sea Wolf Marine Towing & Transp., Inc.,* 2007 WL 3340931 (S.D.N.Y. Nov. 6, 2007).

88.  Defendant ROGER WEST breached these duties owed to Plaintiff rendering the M/Y EXODUS unseaworthy by virtue of one or more of the following acts or omissions:

   a.  failing to reasonably inspect, maintain and/or repair the M/Y EXODUS, its equipment, appurtenances and its cargo;
   b.  failing to ensure that crew members were adequately trained, experienced, supervised, monitored and equipped for the task at hand;
   c.  failing to provide adequate training to crew members regarding safe and proper trip planning, line handling, docking and lookout practices;
   d.  failing to implement procedures, guidelines, and/or policies for the safe and proper trip planning, line handling, docking, and lookout practices;
   e.  failing enforce and require adherence with policies, guidelines, and /or procedures for safe and proper trip planning, line handling, docking, and lookout practices;
   f.  failing to implement policies and procedures regarding pre-trip planning to account for safe docking measures;
   g.  failing to train the M/Y EXODUS crew members on how safely and properly perform their assigned tasks on the M/Y EXODUS;

15

    h.  allowing line-handling, and docking tasks to be assigned and carried out by crew members who lacked the necessary training and experience to do so safely;

    i.  failing to establish and provide retraining and review procedures for the M/Y EXODUS crew members following the occurrence of an incident;

    j.  permitting the operation of the M/Y EXODUS in an unsafe, negligent and careless manner;

    k.  failing to ensure that the M/Y EXODUS was sufficiently crewed by individuals who were adequately trained, experienced, supervised, and equipped for the task at hand;

    l.  failing to arrange for a pre-trip plan that accounted for safe and proper docking, and line-handling of the M/Y EXODUS at Deering Bay Marina;

    m.  permitting the M/Y EXODUS to embark on the September 16, 2019 voyage without a proper pre-trip plan in place to account for docking and line-handling at the Deering Bay Marina;

    n.  permitting the operation of the M/Y EXODUS toward the concrete dock/pier of the Deering Bay Marina to dock the M/Y EXODUS without having lines in place and/or available;

    o.  permitting the Master to require PLAINTIFF  to jump from the vessel onto the concrete dock/pier to secure the M/Y EXODUS and lines while the M/Y EXODUS was still underway;

    p.  failure to warn;

    q.  instructing the crew member to put away the docking lines put out by PLAINTIFF ;

    r.  failing to implement and provide retraining and review procedures for crew members following the occurrence of an accident; and/or

    s.  failing to create or enforce sound operations and management practices necessary to provide its crew with a safe place to work.

89.    As a result of the unseaworthiness of the vessel, PLAINTIFF  was injured about her body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions there from, incurred medical expenses in the care and treatment of PLAINTIFF 's injuries, suffered physical handicap, lost wages, income lost in the past, and her working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature and PLAINTIFF  will suffer the losses and impairments in the future. In addition PLAINTIFF  in the past and in the future has lost the fringe benefits that come with PLAINTIFF 's job. These losses are permanent and continuing and PLAINTIFF  has and will continue to suffer such losses in the future.

90.    The unseaworthiness of the vessel was within the privity and knowledge of Defendant ROGER WEST.

91.    PLAINTIFF  demands trial by jury for all issues so triable.

WHEREFORE, PLAINTIFF demands judgment against Defendant ROGER WEST for actual and compensatory damages, prejudgment and post-judgment interest, and costs; that Defendants claim for exoneration from or limitation of liability be denied; and for such other and further relief deemed just and proper under the circumstances.

## COUNT V
## FAILURE TO PROVIDE MAINTENANCE AND CURE AGAINST DEFENDANTS GOD'S BLESSING LTD. AND ROGER WEST WITHIN THEIR KNOWLEDGE AND PRIVITY

PLAINTIFF realleges, incorporates by reference, and adopts paragraphs one through thirty-five as though they were originally alleged herein and further alleges:

92.     On or about September 16, 2019, PLAINTIFF while in the service of the vessel as a crew member was injured.

93.     Under the General Maritime Law and by operation of treaty, PLAINTIFF , as a seaman, is entitled to recover maintenance and cure form Defendants, until she is declared to have reached maximum possible cure. This includes unearned wages (regular wages, overtime, vacation pay and tips), which are reasonably anticipated to the end of the contract or voyage, whichever is longer.

94.     Defendants GOD'S BLESSING LTD. and ROGER WEST failed to provide PLAINTIFF with prompt, proper and adequate medical treatment for her injuries and other injuries/illnesses developed while in the service of the vessel. The Master JAMES "LARRY" LARMAN denied her requests for medical treatment on the date of the incident. The medical treatment that was finally provided was substantially delayed. Some of the medical providers selected by Defendants have been incompetent and/or ineffective.  The Defendants GOD'S BLESSING LTD. and ROGER WEST's agent that has been arranging PLAINTIFF ' maintenance and cure has been incompetent and/or ineffective in timely providing maintenance, reimbursements, and arranging/authorizing medical care.  At times, PLAINTIFF ' maintenance was not provided timely. Defendants GOD'S BLESSING LTD. and ROGER WEST failed to timely reimburse PLAINTIFF for her out of pocket medical and related expenses, including but not limited to aqua therapy and others.  To date, PLAINTIFF has not yet been reimbursed for all of her out of pocket medical and related expenses. Defendants GOD'S BLESSING LTD. and ROGER WEST failed to provide an adequate amount of maintenance for PLAINTIFF. Defendants GOD'S BLESSING LTD. and ROGER WEST failed to timely authorize and/or arrange recommended medical care.  One example is Defendants failure to authorize or arrange the following treatment recommended by Dr. Blanco on January 24, 2020: Pain management (calmare therapy), Biofeedback, Occupational therapy, Aqua therapy, Hyperbaric chamber therapy, Cognitions behavioral therapy, Transcranial magnetic stimulation, and Pilates/yoga.

95.   PLAINTIFF   has not yet reached maximum medical improvement (MMI)/maximum cure.   The maintenance and cure obligation is ongoing.

96.   Defendants GOD'S BLESSING LTD. and ROGER WEST willfully and callously delayed, failed and refused to pay PLAINTIFF 's entire maintenance and cure so that PLAINTIFF  has become obligated to pay the undersigned a reasonable attorney's fee. In addition Defendants GOD'S BLESSING LTD. and ROGER WEST are late in paying the maintenance and cure.

97.   Defendants GOD'S BLESSING LTD. and ROGER WEST's failure to pay PLAINTIFF 's entire maintenance and cure is willful, arbitrary, capricious, and callous disregard for PLAINTIFF 's rights as a seaman. As such, PLAINTIFF would be entitled to attorney's fee under the General Maritime Law of the United Stated. Further Defendants GOD'S BLESSING LTD. and ROGER WEST failures caused PLAINTIFF  to suffer additional compensatory damages including but not limited to the aggravation of PLAINTIFF 's physical condition, disability, pain and suffering, reasonable fear of developing future physical and medical problems, mental anguish, loss of enjoyment of life, feelings of economic insecurity as well as lost earnings or earning capacity, and medical and hospital expenses in the past in into the future.

98.   Defendants GOD'S BLESSING LTD. and ROGER WEST's breaches of their non-delegable duty to provide maintenance and cure to PLAINTIFF   were willful and wanton, such that PLAINTIFF  is entitled to an award of punitive and exemplary damages against Defendants.

99.   Due to Defendants GOD'S BLESSING LTD. and ROGER WEST's breach of its non-delegable duty to provide maintenance and cure, PLAINTIFF   is entitled to recover her attorneys' fees from Defendants.

100.   The aforesaid failures to provide maintenance and cure were within the privity and knowledge of Defendants GOD'S BLESSING LTD. and ROGER WEST.

WHEREFORE, PLAINTIFF   demands judgment against Defendants GOD'S BLESSING LTD. and ROGER WEST for actual and compensatory damages, as well as punitive and exemplary damages, prejudgment and post-judgment interest, costs, and attorneys' fees.

## COUNT VI
## FAILURE TO TREAT AGAINST DEFENDANT GOD'S BLESSING LTD. WITHIN ITS KNOWLEDGE AND PRIVITY

PLAINTIFF   realleges, incorporates by reference, and adopts paragraphs one through thirty-five and ninety-two through one hundred as though they were originally alleged herein and further alleges:

101.    On or about September 16, 2019, PLAINTIFF  was employed by Defendant GOD'S BLESSING LTD. as a seaman and was a member of the vessel's crew.

102.    The vessel was in navigable waters.

103.    It was the duty of Defendant GOD'S BLESSING LTD. to provide PLAINTIFF with prompt, proper and adequate medical care.

104.    Defendant GOD'S BLESSING LTD. through its agents and/or medical providers negligently failed to promptly provide PLAINTIFF  with prompt, proper, adequate, and complete medical care. This conduct includes, but is not limited to:

    a.    Defendant not giving PLAINTIFF  medical care in a timely manner after her initial injury when the Master refused her repeated requests for medical care, and/or;

    b.    Defendant GOD'S BLESSING LTD. and/or its agents (including but not limited to U.S. Maritime and medical providers) not adequately diagnosing and treating PLAINTIFF  (including but not limited to the foot and pubis injuries as well as CRPS), which led to delays in care, inadequate care and further injuries, and/or;

    c.    Defendant GOD'S BLESSING LTD. and/or its agents (including but not limited to U.S. Maritime and medical providers) not timely authorizing and/or arranging medical care for PLAINTIFF , which led to delays in care, inadequate care and further injuries (including but not limited to:  foot, pubis and CRPS and well as, to date, Defendant has failed to authorize or arrange the following treatment recommended by Dr. Blanco on January 24, 2020: Pain management (calmare therapy), Biofeedback, Occupational therapy, Aqua therapy, Hyperbaric chamber therapy, Cognitions behavioral therapy, Transcranial magnetic stimulation, and Pilates/yoga), all of which aggravated her condition and caused additional damages.

105.    As a direct and proximate result of Defendant GOD'S BLESSING LTD.'s failures, PLAINTIFF  suffered additional plain, disability and/or PLAINTIFF 's recovery was prolonged.

106.    In addition, the PLAINTIFF  was injured about PLAINTIFF 's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions there from, incurred additional medical expenses in the care and treatment of PLAINTIFF 's injuries, suffered physical handicap, lost wages, income lost in the past, and PLAINTIFF 's ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature and PLAINTIFF  will suffer the losses and impairments in the future.

107. This Count is alleged separately from Jones Act Negligence pursuant to *Joyce v. Atlantic Richfield Company*, 651 F.2d 676 (10th Cir. 1981), which stated, in part, "Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief."

108. Due to Defendant GOD'S BLESSING LTD.'s willful and reckless failure to treat PLAINTIFF 's medical conditions, and due to Defendant's provision of substandard medical care in reckless disregard of her rights, PLAINTIFF  is entitled to an award of punitive and exemplary damages against Defendants.

109. Due to Defendant GOD'S BLESSING LTD.'s breaches of its non-delegable duty to provide prompt medical attention, PLAINTIFF  is entitled to an award of attorneys' fees against Defendant.

110. The aforesaid failures to treat were within the privity and knowledge of Defendant GOD'S BLESSING LTD..

WHEREFORE, PLAINTIFF  demands judgment against Defendant GOD'S BLESSING LTD. for actual and compensatory damages, as well as punitive and exemplary damages, prejudgment and post-judgment interest, costs, and attorneys' fees.

## COUNT VII
## FAILURE TO TREAT AGAINST DEFENDANT ROGER WEST WITHIN THEIR KNOWLEDGE AND PRIVITY

PLAINTIFF  realleges, incorporates by reference, and adopts paragraphs one through thirty-five and ninety-two through one hundred as though they were originally alleged herein and further alleges:

111. On or about September 16, 2019, PLAINTIFF  was employed by Defendant ROGER WEST as a seaman and was a member of the vessel's crew.

112. The vessel was in navigable waters.

113. It was the duty of Defendant ROGER WEST to provide PLAINTIFF  with prompt, proper and adequate medical care.

114. Defendant ROGER WEST through his agents and/or medical providers negligently failed to promptly provide PLAINTIFF  with prompt, proper, adequate, and complete medical care. This conduct includes, but is not limited to:

   a. Defendant not giving PLAINTIFF  medical care in a timely manner after her initial injury when the Master refused her repeated requests for medical care, and/or;

   b. Defendant and/or its agents (including but not limited to U.S. Maritime and medical providers) not adequately diagnosing and treating PLAINTIFF

(including but not limited to the foot and pubis injuries as well as CRPS), which led to delays in care, inadequate care and further injuries, and/or;

c.  Defendant and/or its agents (including but not limited to U.S. Maritime and medical providers) not timely authorizing and/or arranging medical care for PLAINTIFF , which led to delays in care, inadequate care and further injuries (including but not limited to:  foot, pubis and CRPS and well as, to date, Defendant has failed to authorize or arrange the following treatment recommended by Dr. Blanco on January 24, 2020: Pain management (calmare therapy), Biofeedback, Occupational therapy, Aqua therapy, Hyperbaric chamber therapy, Cognitions behavioral therapy, Transcranial magnetic stimulation, and Pilates/yoga), all of which aggravated her condition and caused additional damages.

115.  As a direct and proximate result of Defendant ROGER WEST's failures, PLAINTIFF   suffered additional plain, disability and/or PLAINTIFF 's recovery was prolonged.

116.  In addition, the PLAINTIFF   was injured about PLAINTIFF 's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions there from, incurred additional medical expenses in the care and treatment of PLAINTIFF 's injuries, suffered physical handicap, lost wages, income lost in the past, and PLAINTIFF 's ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature and PLAINTIFF   will suffer the losses and impairments in the future.

117.  This Count is alleged separately from Jones Act Negligence pursuant to *Joyce v. Atlantic Richfield Company*, 651 F.2d 676 (10th Cir. 1981), which stated, in part, "Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief."

118.  Due to Defendant ROGER WEST's willful and reckless failure to treat PLAINTIFF 's medical conditions, and due to Defendant's provision of substandard medical care in reckless disregard of her rights, PLAINTIFF   is entitled to an award of punitive and exemplary damages against Defendant.

119.  Due to Defendant ROGER WEST's breaches of its non-delegable duty to provide prompt medical attention, PLAINTIFF   is entitled to an award of attorneys' fees against Defendant.

120.  The aforesaid failures to treat were within the privity and knowledge of Defendant ROGER WEST.

WHEREFORE, PLAINTIFF demands judgment against Defendant ROGER WEST for actual and compensatory damages, as well as punitive and exemplary damages, prejudgment and post-judgment interest, costs, and attorneys' fees.

## COUNT VIII – NEGLIGENCE AGAINST DEFENDANT JAMES "LARRY" LARMAN

PLAINTIFF realleges, incorporates by reference, and adopts paragraphs one through thirty-five as though they were originally alleged herein and further alleges:

121. At all times material hereto, Defendant JAMES "LARRY" LARMAN was the Master of the Vessel M/Y EXODUS.

122. At all times material hereto, Defendant JAMES "LARRY" LARMAN had custody and control of the subject Vessel.

123. At all times material hereto, Defendant JAMES "LARRY" LARMAN owed a duty to PLAINTIFF, to exercise reasonable care for her health, welfare, and safety, including the duty to exercise reasonable care to maintain and operate the vessel in a reasonably safe condition.

124. It was the duty of Defendant JAMES "LARRY" LARMAN to provide PLAINTIFF with reasonable care under the circumstances.

125. On or about September 16, 2019, Defendant JAMES "LARRY" LARMAN breached his duty to provide PLAINTIFF with reasonable care under the circumstances.

126. PLAINTIFF was injured due to the fault and/or negligence of Defendant JAMES "LARRY" LARMAN as follows:

   a. failing to properly navigate the M/Y EXODUS;
   b. failing to implement proper and adequate policies guidelines and/or procedures for safe and proper trip planning, line handling, docking, and lookout practices;
   c. failing to provide the crew of the M/Y EXODUS with a safe place to work with proper and adequate machinery, crew, and equipment;
   d. failing to exercise due care and caution;
   e. failing to promulgate and/or enforce adequate safety policies and/or procedures aboard the M/Y EXODUS;
   f. failing to promulgate and enforce adequate policies, procedures, and/or guidelines for safe and proper trip planning, line-handling, docking, and lookout practices to be followed on the M/Y EXODUS;
   g. failing to implement policies and procedures regarding required pre-trip planning practices to account for safe and proper docking at the close of the trip;
   h. failing to properly train, instruct and/or supervise the crewmembers of the M/Y EXODUS;

     i.   failing to train M/Y EXODUS crew members on how safely and properly perform their assigned tasks on the M/Y EXODUS;

     j.   allowing line-handling and docking tasks to be assigned and carried out by crew members who lacked the necessary training and experience to do so safely;

     k.  instructing the crew member to put away the docking lines put out by PLAINTIFF;

     l.   Physically assaulting PLAINTIFF;

     m.  Assault and battery of PLAINTIFF;

     n.  failing to implement and provide retraining following the occurrence of an incident prior to the subject incident;

     o.  permitting the M/Y EXODUS to embark on the September 16, 2019 voyage without a proper pre-trip plan in place to account for safe docking at the Deering Bay Marina;

     p.  failing to take the necessary measures to ensure dock lines were in place and/or available for docking;

     q.  improper and unsafe steering, docking, line-handling, and lookout practices on the M/Y EXODUS;

     r.   operating the M/Y EXODUS toward the concrete dock/pier of the Deering Bay marina to dock without having lines in place and/or available;

     s.   permitting crew members to carry out line-handling, and docking tasks in an unsafe and dangerous manner;

     t.   requiring the PLAINTIFF to jump from the Vessel onto the concrete dock/pier to secure the M/Y EXODUS and lines while the vessel was still underway;

     u.  failing to keep a proper, safe, and vigilant lookout when PLAINTIFF was securing the M/Y EXODUS and lines as instructed;

     v.   failing to avoid injury of the crew of the M/Y EXODUS;

     w.  failing to warn;

     x.   denying PLAINTIFFs requests for immediate medical care for her injuries;

     y.   failing to properly diagnose and/or treat PLAINTIFF's injuries;

     z.   failing to provide prompt, proper and adequate medical care which aggravated PLAINTIFF 's injuries and caused her additional pain and disability and/or

   aa. failing to create or enforce sound operations and management practices necessary to provide its crew with a safe place to work, all of which injured PLAINTIFF ;

127.   The dangerous conditions created a foreseeable zone of risk to PLAINTIFF.

128.   Defendant JAMES "LARRY" LARMAN knew about the dangerous conditions, or they existed long enough that Defendant should have discovered them in exercising due care, or they occurred with such frequency that Defendant was on notice of them.

129.   Defendant JAMES "LARRY" LARMAN created the dangerous conditions.

130.   As a direct and proximate result of Defendant JAMES "LARRY" LARMAN's negligence as described herein, PLAINTIFF sustained serious injuries, resulting in loss of function, pain and suffering, disability, disfigurement, mental anguish, loss of income in the past and future, loss of earning capacity, the expense of medical

care and treatment, aggravation of pre-existing medical conditions and loss of the capacity of enjoyment of life.   PLAINTIFF's losses are permanent and continuing in nature and she will suffer such losses in the future.

WHEREFORE, the PLAINTIFF demands judgment against the Defendant JAMES "LARRY" LARMAN for all damages which are recoverable under the General Maritime Law of the United States, the laws of the State of Florida and any other damages which she may be entitled to, pre and post judgment, interest; and, any and all other damages and remedies that the Court deems just and proper, and requests a trial by jury of all issues so triable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all of the issues triable by right.

Dated this 24th day of November, 2020.

MEISTER LAW, LLC
Courthouse Tower, Suite 750
44 West Flagler Street
Miami, Florida 33130
Phone: (305) 590-5570
Fax: (305) 675-3787

By s/TonyaJMeister
TONYA J. MEISTER
FLORIDA BAR NO.: 0629243